CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 25 2011

JULIA C. DUDLEY, CLERK
BY: /s/ 
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KRISTY A. COOK, | Civil Action No. 7:10CV00228 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | By: Honorable Glen E. Conrad Chief United States District Judge |
| Defendant. | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Kristy A. Cook, was born on February 3, 1965, and eventually completed her high school education. Ms. Cook has worked as a beautician. She last worked on a regular and sustained basis in 2005. On October 25, 2006, plaintiff filed applications for disability insurance benefits and supplemental security income benefits. Earlier applications for such benefits had proven unsuccessful. In filing her current claims, Ms. Cook alleged that she became disabled for all forms of substantial gainful employment on October 16, 2005 due to a broken back, leg and foot pain, panic, and anxiety attacks. Ms. Cook now maintains that she has remained disabled to the present

time. As to her claim for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See gen., 42 U.S.C. §§ 416(i) and 423(a).

Ms. Cook's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated October 1, 2008, the Law Judge also determined that Ms. Cook is not disabled. The Law Judge found that plaintiff suffers from a lumbar compression fracture status post lumbar fusion; panic disorder without agoraphobia; pain disorder with psychological factors; and a general medical condition. Because of these problems, the Law Judge ruled that Ms. Cook is disabled for her past relevant work activity. However, the Law Judge found that plaintiff retains sufficient functional capacity for a limited range of sedentary exertion. The Law Judge assessed Ms. Cook's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: to lift five pounds frequently and 10 pounds occasionally, to stand or walk for two hours each in an eight hour day, and to sit for six hours in an eight hour work day. From a nonexertional standpoint, the claimant could only occasionally climb, balance, kneel, crawl, stoop, crouch or reach; she could not work around hazardous machinery, at unprotected heights, or on vibrating machinery; and she could not climb ladders, ropes or scaffolds. Mentally, the claimant would be limited to work entailing only occasional interaction with the general public.

(TR 14-15). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge determined that Ms. Cook retains sufficient functional capacity to engage in several specific sedentary work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Ms. Cook is not disabled, and that she is not entitled to benefits

2

under either federal program. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Cook has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. It seems that Ms. Cook was involved in an automobile accident on October 16, 2005. She suffered a fracture at L4, and she eventually underwent a lumbar laminectomy and fusion of L3-L5. Thereafter, Ms. Cook was prescribed occupational and physical therapy, and directed to use a back brace. In the months that followed, plaintiff continued to complain of severe pain and functional restriction. She also sought treatment for a panic disorder. The medical record includes multiple reports from Ms. Cook's family physician, Dr. Kenneth Walker. Dr. Walker has produced findings and opinions indicating that Ms. Cook is disabled for all forms of substantial gainful activity. The record also includes a report from Dr. Pamela Tessnear, a psychologist. Dr. Tessnear saw Ms. Cook on one occasion. Dr. Tessnear

3

produced findings which indicate that plaintiff is unable to work on a sustained basis. The Administrative Law Judge discounted the opinions of Dr. Walker and Dr. Tessnear. Instead, the Law Judge cited a consultative report from Dr. Gary Craft dated August 7, 2007. Based largely on Dr. Craft's findings, the Administrative Law Judge posed a hypothetical question to a vocational expert which assumed residual functional capacity for a limited range of sedentary exertional activities. In response, the vocational expert identified several jobs which Ms. Cook could be expected to perform.

As the court sees it, the difficulty in this case is that the Administrative Law Judge's hypothetical to the vocational expert did not include certain work-related limitations that were identified by Dr. Craft, or that can reasonably be inferred from Dr. Craft's report. Stated differently, even assuming that the Law Judge properly credited Dr. Craft's report over those of Dr. Walker and Dr. Tessnear, the court does not believe that there is substantial evidence to support the Law Judge's reliance on the testimony of the vocational expert in concluding that there are still jobs which Ms. Cook can perform. The court finds that it is necessary to remand this case to the Commissioner for a new administrative hearing at which a comprehensive hypothetical question can be put to a qualified vocational expert.

In summarizing the medical evidence, the Administrative Law Judge characterized Dr. Craft's report as follows:

> Dr. Craft, the consulting physician, advised on August 7, 2007 that the claimant could lift a maximum of 20 pounds occasionally and 10 pounds frequently. She had moderate postural limitations, and she could not do any major climbing or working at heights. She had no manipulative limitations and no other environmental limitations.

4

(TR 17). However, a review of Dr. Craft's report indicates that the Law Judge omitted several of the consultative physician's significant findings. In summarizing Ms. Cook's history, Dr. Craft stated as follows:

> She states that she was involved in a 4-wheeler accident in October 2005 sustaining a fracture to the fourth lumbar vertebrae. She required surgery and has four rods in place. The rods were inserted to stabilize the spine.
>
> She now complains with constant low back pain which radiates down both legs into each foot. She describes a variety of pain as dull, throbbing and burning. She states that any type of lifting or bending or standing for a prolonged period of time will aggravate the pain. She now takes Lortab as needed.
>
> She has a long history of anxiety with panic attacks and is averaging four to five attacks per month. The typical attack will last for several minutes and completely incapacitates her. She does not take any medication for this at the present time.
>
> She was free of all other symptomatology.

(TR 381). Dr. Craft went on to list the following findings in terms of plaintiff's residual functional capacity:

> This lady, in her present state of health, could occasional [sic] pick up and carry 20 pounds of weight up to one-third of an 8-hour workday with frequent breaks. She could frequently pick up and carry 10 pounds of weight up to one-half of an 8-hour workday. She was free of any manipulative or any environment limitations.
>
> From a workplace standpoint, she should not do any major climbing or working on heights. She would have moderate postural limitations. This individual's statements and portrayal of symptoms are consistent with the medical signs and findings and test results.
>
> This individual's statements and portrayal of symptoms are consistent with the medical history and treatment provided by the claimant.
>
> The claimant's own statements throughout the interview and examination process are consistent.

(TR 384).

5

The court believes that the Administrative Law Judge failed to recognize two very important findings in Dr. Craft's report. More generally, the court believes that it is quite relevant that Dr. Craft deemed Ms. Cook to be totally sincere in her expression of her symptoms and limitations. He specifically observed that her "statements and portrayal of symptoms" are consistent with the medical findings, test results, and medical history. More to the point for present purposes, the court notes that in assessing plaintiff's functional capacity, Dr. Craft specifically observed that she could engage in certain work-related activities if she were permitted "frequent breaks." (TR 384).

In questioning the vocational expert at the administrative hearing, the Administrative Law Judge posed the following hypothetical question for the expert's consideration:

> Assume an individual such as the claimant who retains the residual functional capacity of work that requires lifting and carrying no more than 10 pounds occasionally, five pounds frequently, standing and walking no more than two hours in an eight-hour day, sitting for no more than six hours in an eight-hour day, and work that involves occasional climbing, balancing, kneeling, crawling, stooping, crouching and reaching, but the work must not involve hazardous machinery, unprotected heights, climbing ladders, ropes and scaffolds, and involves occasional interactions with the general public. Would such a person be able to perform the claimant's past work as she actually performed it, or as it is customarily performed in the national economy?

(TR 40). In response, while the vocational expert indicated that Ms. Cook could no longer be expected to work on her feet as a beautician, the expert identified several specific sedentary, clerk positions which such a hypothetical person could perform. (TR 41). The Law Judge went on to ask the vocational expert to assume that all of plaintiff's testimony at the hearing had been credible, and that she would require breaks during 30 - 40% of a workday or work week. (TR 41-42). In response, the vocational expert indicated that with such an amount of time being spent "off task," there would be no jobs which Ms. Cook could successfully perform.

During his cross-examination of the vocational expert, plaintiff's attorney asked the expert how much "off task" time is tolerated in the workplace. (TR 44). In response, the expert indicated that no more than 15% of a workday could be spent "off task." (TR 44).[1]

Based on the Law Judge's reliance on the consultative report submitted by Dr. Craft, Dr. Craft's observation that Ms. Cook would require "frequent breaks" during a workday, and the absence of any indication from Dr. Craft that plaintiff could be expected to work on a sustained eight hour per day basis, the court believes that the only reasonable resolution of this case is to remand the matter to the Commissioner for more precise questioning of the vocational expert. It would seem that Dr. Craft believed that plaintiff's physical impairments and work tolerance would require that she be given the opportunity to take "frequent breaks" during the work day, at least during the performance of somewhat heavier tasks. Moreover, Dr. Craft did not suggest that plaintiff could sit and stand for a total of eight hours per day, on a regular and sustained basis. Dr. Craft indicated that plaintiff's complaints as to decreased work tolerance were "consistent" with the objective evidence in her case. Dr. Craft opined that plaintiff's panic attacks completely incapacitate her, and occur four to five times per month. (TR 381).

Given the Law Judge's ultimate finding that plaintiff retains sufficient functional capacity for less than a full range of sedentary exertion, the vocational expert indicated that Ms. Cook would be able to engage in work activities in which no more than 15% of the workday could be spent "off task." It would seem necessary for the Commissioner to obtain further medical input as to whether plaintiff's capacity for sustained work activity has been compromised to such extent. Once that

---

[1] During further cross-examination, the expert testified to the effect that Ms. Cook would be disabled under the functional assessments submitted by Dr. Walker and Dr. Tessnear.

determination is made, it would also seem appropriate for the Commissioner to obtain further input from a vocational expert as to whether there are a significant number of jobs which would permit breaks during the workday with the frequency required by Ms. Cook, given her particular combination of physical and emotional problems. In any event, as it now stands, it is clear that the hypothetical question put to the vocational expert did not include all of the limitations identified in the medical report upon which the Law Judge ultimately relied. It is well settled that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

In passing the court notes that plaintiff has filed a motion for summary judgment, advancing several arguments, including one centering on the inadequacy of the questioning of the vocational expert. Generally, the court believes that the Law Judge might reasonably rely on the report of Dr. Craft in concluding that Dr. Walker failed to make sufficient objective findings so as to support his conclusion as to plaintiff's overall disability. The court also believes that the Administrative Law Judge reasonably determined to accord less weight to Dr. Tessnear's psychological report, given the facts that the psychologist apparently only saw plaintiff on a single occasion and that the diagnosis rendered generally requires more of a longitudinal perspective. On the other hand, based on Dr. Tessnear's report, the Commissioner may well wish upon remand to arrange for input from another examining psychiatrist or psychologist. Finally, and most importantly, the court is unable to conclude that Dr. Craft's report compels a determination that plaintiff's pain and nonxertional problems are necessarily disabling. While it is true that Dr. Craft considered Ms. Cook to be sincere in describing her history and symptoms, the symptoms recounted by Dr. Craft are much less

significant than those set forth by plaintiff in her testimony at the administrative hearing. Stated differently, the court does not agree that Dr. Craft's comments as to the consistency of plaintiff's statements and portrayal of symptoms can be read so as to compel the conclusion that plaintiff's testimony at the administrative hearing must be deemed fully credible.

For the reasons stated, the court finds that plaintiff has established "good cause" for remand of her case to the Commissioner for further development and consideration as outlined above. See 42 U.S.C. § 405(g). If the Commissioner is unable to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present supplemental evidence and argument. As indicated above, the court believes that it would be helpful for the Commissioner to receive input from a medical advisor as to the frequency of breaks in the workplace, which plaintiff's condition would reasonably require. The court also believes that it would be helpful for the Commissioner to receive input from a mental health specialist as to the permanence and severity of plaintiff's panic disorder. An appropriate order of remand will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 25th day of April, 2011.

_____
Chief United States District Judge